IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHERYL MURPHY** | * | |
| | * | |
| v. | * | Civil Case No. GLR-14-1856 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. [ECF Nos. 16, 21]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that the Court deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis.

Ms. Murphy filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 11, 2009. (Tr. 147-152). Her applications were denied initially and on reconsideration. (Tr. 77-83, 86-91). An Administrative Law Judge ("ALJ") held a hearing on July 30, 2013, at which Ms. Murphy was represented by counsel. (Tr. 31-56). At the hearing, Ms. Murphy amended her disability onset date to November 5, 2010. Because her amended onset date was after her date last insured, she effectively withdrew her DIB claim. (Tr. 33-34). Her DIB claim was thus dismissed, and the ALJ considered only her SSI claim. (Tr. 11). Following the hearing, the ALJ determined that Ms. Murphy was not

disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 8-30). The Appeals Council denied Ms. Murphy's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Murphy suffered from the severe impairments of mood disorder, substance addiction disorder, diabetes, and torn left meniscus. (Tr. 13). Despite these impairments, the ALJ determined that Ms. Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except: She can stand for no more than 30 minutes at a time, after which she must sit for 5 to 10 minutes. She can perform no more than occasional postural activity. She cannot push/pull with the left lower extremity. She can perform only simple, routine, repetitive tasks in a stable environment. She can perform jobs involving only occasional interaction with the public and coworkers.

(Tr. 17). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Murphy could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 12-24).

Ms. Murphy disagrees. She raises two primary arguments on appeal: (1) that the ALJ erred in assessing her RFC, and (2) that the ALJ erred in evaluating the severity of her impairments at step two of the sequential evaluation. Because I agree that the ALJ erred in assessing Ms. Murphy's RFC, I recommend that the Court remand the case to the Commissioner for additional analysis. In so recommending, I express no opinion as to whether the ALJ's ultimate determination that Ms. Murphy was not disabled is correct or incorrect.

In assessing a claimant's RFC, ALJs are instructed to consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.945(a)(4). Ms. Murphy first argues that the ALJ erred in considering her ability to meet the mental requirements of work. Pl. Mem. 14-16. The mental activities relevant to the RFC inquiry include: "understanding, remembering, and carrying out instructions," and "responding

appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. § 416.945(c). In particular, Ms. Murphy contends that the ALJ failed to address her ability to (1) "understand, carry out, and remember instructions"; (2) "respond appropriately to supervision and usual work situations"; or (3) "deal with changes in a routine work setting." Pl. Mem. 15-16. Ms. Murphy's arguments, however, misrepresent the ALJ's RFC assessment and ignore the ALJ's discussion in support thereof, which address most of the relevant functions. For example, the ALJ's RFC assessment included limitations to a "stable environment" and "only occasional interaction with the public and coworkers."[1] (Tr. 17). These limitations clearly correspond with Ms. Murphy's ability to "respond[] appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. § 416.945(c). However, I agree that the ALJ's discussion of Ms. Murphy's ability to understand, remember, and carry out instructions is wanting, particularly in light of the Fourth Circuit's recent determination that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (internal quotation marks and citation omitted) (joining the Third, Seventh, Eight, and Eleventh Circuits). In *Mascio*, the Fourth Circuit determined that remand was warranted because the ALJ did not explain the apparent inconsistency between his determination at step three of the sequential evaluation that the claimant suffered moderate difficulty in maintaining concentration, persistence, or pace, and his RFC assessment, which did not include any functional limitations accounting for the step three determination. Similarly, in this case, at step three of the sequential evaluation, the ALJ determined that Ms. Murphy has "moderate difficulties" with respect to concentration, persistence, or pace, yet the ALJ's RFC assessment included no limitations related

---

[1] I note that Ms. Murphy also claims that the ALJ's limitation to "occasional interaction with the public and co-workers" is inconsistent with his determination that Ms. Murphy could meet the mental requirements of work on a "sustained" basis. Pl. Mem. 17-18. Ms. Murphy, however, ignores the fact that there exists competitive, remunerative work which requires interaction with the public and co-workers no more than occasionally.

to Ms. Murphy's ability to stay on task. Nor did the ALJ explain why Ms. Murphy's moderate difficulties in maintaining concentration, persistence, and pace did not cause such limitations. Notably, at step three the ALJ stated that Ms. Murphy's activities of daily living ("ADLs") suggest that she has "adequate attention/.concentration abilities to perform simple tasks in the workplace." (Tr. 16). However, I cannot determine that the ALJ's statement at step three cured the apparent inconsistency, because the ALJ offered no explanation concerning why Ms. Murphy's previously summarized ADLs, including watching television, washing her face, brushing her teeth, going for short walks, and fixing meals, demonstrate an ability to sustain concentration doing presumably repetitive simple tasks in a work setting. Absent some additional explanation, I cannot conclude that the ALJ's RFC assessment was supported by substantial evidence.

In support of her argument that she is limited with respect to the mental requirements of work, Ms. Murphy cites the opinions of her treating psychiatrist, Dr. Olivares, claiming that the ALJ erred in discounting the same. Pl. Mem. 16-17. At step three of the sequential evaluation, the ALJ assigned "little weight" to Dr. Olivares's opinions that Ms. Murphy suffered extreme limitations in her ability to maintain social functioning and concentration, persistence, and pace. Because I am remanding on other grounds, however, I need not determine whether the ALJ's cursory assessment of Dr. Olivares's opinions at step three would warrant remand standing alone. However, on remand the ALJ should ensure that his evaluation of Dr. Olivares's opinions fully complies with the parameters set forth in 20 C.F.R. § 416.927.

Ms. Murphy's second main argument, that the ALJ erred at step two of the sequential evaluation by failing to classify her personality disorder as a severe impairment, lacks merit. *See* Pl. Mem. 18-19. Step two of the sequential evaluation is a threshold determination whether a claimant is suffering from a severe impairment or combination of impairments. *See Bowen v.*

*Yuckert*, 482 U.S. 137, 147-48 (1987) (upholding the severity threshold because, "if a claimant is unable to show that he has a medically severe impairment . . . there is no reason for the Secretary to consider the claimant's age, education, and work experience"). If a claimant is not suffering from any severe impairments, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). If a claimant is found to be suffering from at least one severe impairment, the analysis simply proceeds to the next step. *Id.* In this case, at step two, the ALJ determined that Ms. Murphy's alleged personality disorder is not a severe impairment. (Tr. 14). In support of his determination, the ALJ noted that the record "contain[s] little evidence of an actual dissociative or similar disorder," and that her treating therapist diagnosed her with only "'rule out' Dissociative Identity Disorder." *Id.* Ms. Murphy has not identified any evidence undermining the ALJ's rationale; nor has she offered evidence showing that her alleged personality disorder significantly limits her ability to do basic work activities. *See* 20 C.F.R. § 416.921(a). Moreover, after finding several of Ms. Murphy's other impairments severe, the ALJ continued with the sequential evaluation process and considered all of Ms. Murphy's impairments, including her alleged personality disorder, in assessing her RFC. *See* 20 C.F.R. § 416.945(a)(2); (Tr. 18) ("[A]n alternate personality named 'Annabelle,' who is not a nice person."); (Tr. 21) ("In mid-November 2010, the claimant reported some experiences with her 'alter' self, Annabelle, but was in a happy mood, 'clean and sober and in a good frame of mind'") (citing (Tr. 427)). The ALJ's evaluation of Ms. Murphy's alleged personality disorder is therefore supported by substantial evidence.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment [ECF No. 21];

2. the Court DENY Ms. Murphy's Motion for Summary Judgment [ECF No. 16];

   3. the Court REVERSE IN PART due to inadequate analysis the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g);

   4. the Court REMAND this case for further proceedings in accordance with this opinion; and

   5. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  June 26, 2015                                         /s/
                                                       Stephanie A. Gallagher
                                                       United States Magistrate Judge